IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-00175-01-CR-W-DGK |
| ) | |
| PARIS B. YOUNG, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on the Motion of Defendant Paris Young to Suppress Evidence (Doc. #43). For the reasons set forth below, it is recommended that the portion of the motion seeking the suppression of a statement the defendant made at the scene, which statement was made in response to questioning initiated by a law enforcement officer, be granted. The remainder of the motion should be denied.

I. BACKGROUND

On June 18, 2018, a Criminal Complaint was filed against defendant Paris B. Young. On June 26, 2018, the Grand Jury returned a four-count Indictment against defendant Young. On July 17, 2019, the Grand Jury returned a four-count Superseding Indictment against defendant Young. The Superseding Indictment charges that on June 16, 2018, defendant Young possessed with intent to distribute "crack" cocaine (Count One), possessed a firearm in furtherance of a drug trafficking crime (Count Two), was a felon in possession of a firearm (Count Three), and possessed a firearm with an obliterated serial number (Count Four).

An evidentiary hearing on the motion to suppress was held on December 20, 2019. Defendant Young was represented by appointed counsel Angela L. Williams. The Government was represented by Assistant United States Attorney Jeffrey Q. McCarther. The Government called Officers Kelsey Wingate and Christopher Lear of the Kansas City, Missouri Police Department as witnesses. The defense called no witnesses to testify.

## II.  FINDINGS OF FACT

On the basis of the evidence presented at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On June 16, 2018, Officers Kelsey Wingate and Christopher Lear were on routine patrol. (Tr. at 6, 41.) Officer Lear was driving the patrol car and Officer Wingate was the passenger in the car. (Tr. at 7, 41-42.) At approximately 6:55 p.m., the officers observed a maroon BMW turning northbound from 41st onto Garfield, failing to use a turn signal. (Tr. at 7, 12, 42.) Officer Wingate testified that her vision of the BMW's turn signal was blocked in part by another vehicle until the BMW had completed the turn, but that she could see through the glass of the vehicle between them to see that the BMW did not have a turn signal on. (Tr. at 33, 39-40.) Officer Lear testified that when the BMW turned right, he had an angle where he could see the BMW's rear taillight area on the passenger's side. (Tr. at 45.) Officer Lear testified that he could see that the BMW's right turn signal did not come on. (Tr. at 45, 55-58.)

2. Failure to use a turn signal when making a turn in the City of Kansas City, Missouri, is a traffic violation. (Tr. at 7-8, 43.) Section 70-454 of the Kansas City, Missouri, Code of Ordinances provides in part:

    Sec. 70-454. – Turning movements; required signals.

    (a) No person shall . . . turn a vehicle from a direct course or move right or left upon a roadway, unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in this division.

    (b) A signal of intention to turn right or left, when required, shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

2

(Tr. at 8; Gov. Exh. 5.) Officer Wingate testified that the BMW was in violation of subsections (a) and (b) of this ordinance. (Tr. at 8-9.)

3. The officers made the decision to pull the vehicle over. (Tr. at 9, 43.) The officers initiated their emergency lights and siren. (Tr. at 9, 43.) The BMW pulled to the side of the road. (Tr. at 9, 43.) There was one person in the vehicle, later identified as Paris Young. (Tr. at 9-10, 43.) As Officer Lear approached the vehicle, he saw the driver leaning over the center console area making movements consistent with altering or placing an object there. (Tr. at 46-47.) Officer Lear testified that these movements indicated to him that there was something the driver did not want him to see. (Tr. at 47.) The driver had opened the car door and was wanting to get out of the vehicle. (Tr. at 47.) Officer Wingate testified that when people immediately try to get out of the car when they are pulled over, it usually indicates that they are trying to get themselves away from contraband inside the vehicle. (Tr. at 14.) Officer Lear testified that it indicates to him that there might be something in the car that the person does not want to be associated with. (Tr. at 46.) Officer Lear testified that the driver was not listening to his commands to shut the door and to get back in the car, so Officer Lear told the driver that if he wanted to get out, they could go talk by the officers' car. (Tr. at 47.) Officer Lear directed the driver (defendant Young) to stand in front of the police vehicle so that they were out of traffic and could talk safely. (Tr. at 47.) The door to the BMW was left open. (Tr. at 16, 49.)

4. While Officer Lear was explaining to defendant Young why he had been pulled over, Young was looking around kind of nervous and antsy, consistent with someone looking for a place to run. (Tr. at 47.) Defendant Young then pushed off Officer Lear and tried to run across the street. (Tr. at 15, 47-48.) The officers testified that it is a crime to run away from a traffic stop. (Tr. at 15, 48.) The crime is called resisting a lawful traffic stop. (Tr. at 15, 48.) Defendant Young was placed under arrest for resisting a lawful traffic stop. (Tr. at 15, 48.) The officers considered the BMW abandoned, given Young's attempt to run from the car, leaving the car door open. (Tr. at 16, 21, 49.)

5. The officers testified that in their experience, when people flee on foot from traffic stops, they are fleeing because there is contraband in the car, they have warrants, or they are driving while suspended or revoked. (Tr. at 15, 48.)

6. When asked why he ran, defendant Young told the officers that he was "dirty." (Tr. at 16, 49; Govt. Exh. 4 at 6:56:38-43.) Officer Wingate testified that she took this to mean that Young had narcotics, a gun, or warrants. (Tr. at 17.) Officer Lear testified that he took this to mean that Young had either warrants or items of contraband on him, something that would get him in trouble with the law. (Tr. at 49.)

3

7. The officers testified that it is police policy to tow a vehicle if the driver is arrested and the vehicle is parked on a public street. (Tr. at 17, 50.) The Kansas City, Missouri Police Department tow policy provides in part:

> E. Custodial Arrest of Driver of Vehicle
>
> 1. When a vehicle is stopped on private or public property and the operator (arrestee) is placed under custodial arrest, the members will allow the operator (arrestee) time to arrange for the vehicle's timely removal unless:
>
>    a. The arrestee's physical condition, active resistance, or disorderly conduct prevents such an arrangement; or
>
>    b. The person operating the vehicle eludes arrest for an alleged offense for which the member would have taken the operator into custody (RSMo 304.155)[1] . . .

(Govt. Exh. 6 at A-5.) Officer Wingate testified that both subsections (a) and (b) applied in that defendant Young actively resisted by trying to run away and that the officers would have placed Young under arrest for possession of the firearm and crack cocaine later found in the vehicle and on his active warrants which were subsequently discovered. (Tr. at 18-19.)

8. The officers testified that when a vehicle is towed, officers are required to do a content inventory of the vehicle. (Tr. at 17, 50.) The tow policy provides in part:

> A. Custodial Arrest Content Inventory
>
> * * *
>
> 2. If the vehicle is towed from the scene pursuant to a custodial arrest[,] a complete content inventory of the interior, engine compartment, and trunk will be completed to prevent any article of valuable property from being overlooked.

---

[1] Section 304.155.1(9) provides: "Any law enforcement officer within the officer's jurisdiction . . . may authorize a towing company to remove to a place of safety [a]ny abandoned property for which the person operating such property or vehicle eludes arrest for an alleged offense for which the officer would have taken the offender into custody."

4

(Govt. Exh. 6 at B-1.) In conjunction with towing a vehicle, officers also must fill out a tow form, Form 36. (Tr. at 20.) A content inventory and a tow form were filled out in this case. (Tr. at 20-21, 51.)

9. The officers testified that they also believed they had probable cause to search the vehicle given that defendant Young was seen fumbling around with the center console as the officers approached the vehicle, that Young fled from the vehicle, and given Young's statement that he was "dirty." (Tr. at 21-22, 51.)

10. The officers discovered 46 small baggies of crack cocaine in the center console of the BMW. (Tr. at 22-23.) A loaded Taurus, Model Judge .45-caliber revolver was recovered from under the driver's seat. (Tr. at 23-24.) Part of the serial number on the revolver was scratched off. (Tr. at 24.)

11. After the inventory search of the BMW was completed, the vehicle was towed to the city tow lot. (Tr. at 25, 52.)

12. Subsequent to his arrest, defendant Young made an incriminatory statement during interrogation. (Tr. at 64.)

### III. DISCUSSION

Defendant Young seeks to suppress all statements and evidence, and testimony related to such statements and evidence, obtained as a result of an unlawful arrest, search, and seizure of the defendant. Specifically, defendant Young argues that there was no lawful basis for the stop because he put on his turn signal when he made the turn. (Young Mot. to Suppress Evidence at 2; Doc. #43.) Defendant Young further argues that the sun reflected on the rear window of the car in front of the officers' vehicle, which made it impossible for the officers to see Young's blinker. (*Id.*) Given the invalidity of the stop, defendant Young argues that all statements and evidence which came after the stop must be suppressed. (*Id.*; Tr. at 75.)

A. The Stop

As the Eighth Circuit Court of Appeals has observed, "any traffic violation, however minor, gives an officer probable cause to stop a vehicle." *United States v. Arciniega*, 569 F.3d

5

394, 397 (8th Cir. 2009). *Accord United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007); *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002), *cert. denied*, 538 U.S. 992 (2003).

Prior to stopping defendant Young, the officers observed that Young failed to signal when making a right turn. (Fact No. 1.) Officer Wingate testified that her vision of the BMW's turn signal was blocked in part by another vehicle until the BMW had completed the turn, but that she could see through the glass of the vehicle between them to see that the BMW did not have a turn signal on. (*Id.*) Officer Lear testified that when the BMW turned right, he had an angle where he could see the BMW's rear taillight area on the passenger's side. (*Id.*) Officer Lear testified that he could see that the BMW's right turn signal did not come on. (*Id.*) The Court credits the officers' testimony regarding their observations of defendant Young's driving. Failure to use a turn signal when making a turn in the City of Kansas City, Missouri, is a traffic violation. (Fact No. 2.) The officers had probable cause to stop defendant Young based on a violation of Section 70-454 of the Kansas City, Missouri, Code of Ordinances.

B. The Arrest

As Officer Lear approached the vehicle, he saw the driver leaning over the center console area making movements consistent with altering or placing an object there. (Fact No. 3.) Officer Lear testified that these movements indicated to him that there was something the driver did not want him to see. (*Id.*) Officer Lear testified that the driver had opened the car door and was wanting to get out of the vehicle. (*Id.*) Officer Lear testified that the driver was not listening to his commands to shut the door and to get back in the car, so Officer Lear told the driver that if he wanted to get out, they could go talk by the officers' car. (*Id.*) Defendant Young did exit the vehicle, and while Officer Lear was explaining to Young why he had been pulled over, Young was

looking around kind of nervous and antsy, consistent with someone looking for a place to run. (Fact No. 4.) Defendant Young then pushed off Officer Lear and tried to run across the street. (*Id.*) Defendant Young was placed under arrest for resisting a lawful traffic stop.[2] (*Id.*)

The United States Supreme Court has held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The officers were justified in arresting defendant Young for resisting a lawful traffic stop.

    C.    Defendant's Statement at the Scene

*Miranda* warnings are required when there is a "custodial interrogation," which is defined by the Supreme Court as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In *United States v. Ray*, 690 Fed. Appx. 366, 368 (6th Cir. 2017), defendant Ray was handcuffed while officers executed a search warrant at his

---

[2] Mo. Rev. Stat. § 575.150, Resisting or interfering with arrest—penalty, provides in part:

1. A person commits the offense of resisting or interfering with arrest, detention, or stop if he or she knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or she:

    (1) Resists the arrest, stop or detention of such person by fleeing from such officer . . . .

2. This section applies to:

    (1) Arrests, stops, or detentions, with or without warrants;

    (2) Arrests, stops, or detentions, for any offense, infraction, or ordinance violation . . . .

7

residence. Several firearms were discovered in the residence. *Id.* One of the officers asked Ray if he had been to jail before and Ray replied that he had been to federal prison. *Id.* The court found:

> . . . Even this brief and cursory exchange amounted to a custodial interrogation that required *Miranda* warnings. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)("We conclude that the *Miranda* safeguards come into play whenever a person in custody is subject to either express questioning or its functional equivalent. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.").
>
> For starters, there is no dispute that Ray was handcuffed at the time and, thus, "in custody" for *Miranda* purposes. . . . And asking a suspect whether he had a criminal record . . . certainly amounts to "express questioning" that "police should know is reasonably likely to evoke an incriminating response." *See Innis*, 446 U.S. at 300-01 . . . .

690 Fed. Appx. at 372. *Accord United States v. Martinez*, 462 F.3d 903, 910 (8th Cir. 2006), *cert. denied*, 549 U.S. 1272 (2007); *United States v. Butler*, No. 4:16-00108-CR-RK, 2017 WL 6089072, at *6 (W.D. Mo. Dec. 7, 2017).

Defendant Young was placed under arrest after he tried to run. (Fact No. 4.) When asked why he ran, defendant Young told the officers that he was "dirty." (Fact No. 6.) The Court finds that defendant Young's statement came about as a result of a question posed by an officer after Young was taken into custody or otherwise deprived of his freedom of action. The officer should have known that this question was reasonably likely to evoke an incriminating response. The Court finds that defendant Young's statement, which was made in response to questioning initiated by a law enforcement officer, should be suppressed.

8

D. The Warrantless Search of the Vehicle

The government first justifies the warrantless search of the BMW as a valid inventory search.[3] (Govt. Resp. at 5-6; Doc. #45.) "It is well-settled that a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to secure and protect vehicles and their contents within police custody." *United States v. Rehkop*, 96 F.3d 301, 305 (8th Cir. 1996)(citing *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)). A warrantless inventory search of a vehicle is valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation. *See Bertine*, 479 U.S. at 372; *United States v. Baldenegro-Valdez*, 703 F.3d 1117, 1125-26 (8th Cir.), *cert. denied*, 569 U.S. 999 (2013). As set forth above, defendant Young was arrested for resisting a lawful traffic stop. (Fact No. 4.) The vehicle Young had been driving was parked on Garfield, a public street. (Fact Nos. 1, 3.) It is police policy to tow a vehicle if the driver is arrested and the vehicle is parked on a public street. (Fact No. 7.) The Kansas City, Missouri Police Department tow policy requires that an officer complete an inventory of a vehicle if the vehicle is going to be towed. (Fact No. 8.)

---

[3]The government also argues that defendant Young lacks standing to challenge the search of the vehicle because he abandoned the vehicle. (Govt. Resp. at 7-8; Doc. #45.) The law is clear that when a defendant, who is being pursued by police, exits his vehicle and flees on foot, the search of the abandoned vehicle does not implicate the Fourth Amendment because the defendant relinquished any legitimate expectation of privacy he may have had in the vehicle when he left it behind. *See United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015); *United States v. Smith*, 648 F.3d 654, 660 (8th Cir. 2011), *cert. denied*, 565 U.S. 1138 (2012). In this case, however, while Young may have attempted to abandon his vehicle by fleeing, he was immediately stopped. (Fact No. 4.) The Court finds it more prudent to examine the government's justifications for the warrantless search of the vehicle, rather than base its ruling on a lack of standing for abandonment where the defendant was unsuccessful in his attempt to flee from the scene.

9

The Court finds that the officers' decision to tow the vehicle was made and the resulting inventory search was conducted pursuant to standardized police procedures and not in bad faith or for the sole purpose of investigation. Thus, the Court finds that an inventory search of the vehicle was appropriate.

The government further argues that the officers had probable cause to search the vehicle under the automobile exception to the warrant requirement. (Govt. Resp. at 7; Doc. #45.) In *Arizona v. Gant*, 556 U.S. 332 (2009), the United States Supreme Court provided the following basic guidance when analyzing a warrantless search of a vehicle:

> Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967)(footnote omitted).

*Gant*, 556 U.S. at 338. One of the established exceptions to the warrant requirement that the Court listed was the "automobile exception." The Court stated:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. . . . If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. . . . *Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader.

*Gant*, 556 U.S. at 346-47. *See also United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (automobile exception permits warrantless search of vehicle if police had probable cause to believe vehicle contained contraband before search began). "Probable cause exists 'where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Cortez-Palomino*, 438 F.3d 910, 913 (8th

10

Cir. 2006)(quoting *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005)). "In determining probable cause, law enforcement officers may draw inferences based upon their experience." *Cortez-Palomino*, 438 F.3d at 913.

In *United States v. Harris*, No. 3:04 CR 360 RNC, 2005 WL 3021178, at *3 (D. Conn. Nov. 10, 2005), as an officer was pulling a driver over for a speeding violation, he observed the driver lean toward the glove compartment while still moving (which he considered unusual behavior), then speed away, and finally flee on foot after the vehicle was stopped by officers. The defendant moved to suppress items found in the glove compartment of the vehicle on the ground that the warrantless search violated the Fourth Amendment. *Id.* at *1. The court found the warrantless search did not violate the Fourth Amendment because the officers had probable cause to believe the glove compartment contained contraband based on the driver's actions. *Id.* at *3.

In this case, as set forth above, when Officer Lear approached the vehicle, he saw defendant Young leaning over the center console area making movements consistent with altering or placing an object there. (Fact No. 3.) Officer Lear testified that these movements indicated to him that there was something Young did not want him to see. (*Id.*) Defendant Young opened the car door and was wanting to get out of the vehicle despite Officer Lear's commands to stay in the car. (*Id.*) Officer Wingate testified that when people immediately try to get out of the car when they are pulled over, it usually indicates that they are trying to get themselves away from contraband inside the vehicle. (*Id.*) Officer Lear testified that it indicates to him that there might be something in the car with which the person does not want to be associated. (*Id.*) While Officer Lear was explaining to defendant Young why he had been pulled over, Young pushed off

11

Officer Lear and tried to run across the street.  (Fact No. 4.)   The officers testified that in their experience, one of the reasons people flee on foot from traffic stops is because contraband is in the car.  (Fact No. 5.)   The Court finds that defendant Young's actions created a fair probability that contraband or evidence of a crime would be found inside the vehicle.   Thus, pursuant to the automobile exception, the officers were also authorized to conduct a warrantless search of the vehicle.

### E. Fruit of the Poisonous Tree

Finally, defendant Young argues that because the officers had no basis for the traffic stop, all evidence and statements obtained as a result of the stop must be suppressed as fruit of the poisonous tree.  (Young Mot. to Suppress Evidence at 2; Doc. #43.)   Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of physical evidence and verbal evidence obtained directly or indirectly through the exploitation of police illegality.  *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963).   As set forth above, the Court finds that there was probable cause to stop defendant Young.   Therefore, defendant's fruit of the poisonous tree argument must fail.

## IV.  CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order granting in part the Motion of Defendant Paris Young to Suppress Evidence (Doc. #43).   The portion of the motion seeking the suppression of a statement the defendant made at the scene, which statement was made in response to questioning initiated by a law enforcement officer, should be granted.   The remainder of the motion should be denied.

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Lajuana M. Counts*
Lajuana M. Counts
United States Magistrate Judge